UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN GERARDO VELASQUEZ VELASQUEZ,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>Respondents. | Case No.:  26cv0657-LL-VET<br><br>**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>**[ECF No. 7]** |

Before the Court is Petitioner Christian Gerardo Velasquez Velasquez's Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 7 ("Pet."). Respondents filed a Return [ECF No. 8], and Petitioner filed a Traverse [ECF No. 9]. For the reasons set forth below, the Court **GRANTS** the Petition.

## I.      BACKGROUND

Petitioner is a citizen of Honduras who entered the United States in December 2015 and was detained. Pet. at 2–3. He applied for asylum. *Id.* On May 4, 2016, an immigration judge ordered him removed but granted relief in the form of withholding of removal. *Id.* The order became final on that date because Petitioner and the Department of Homeland Security waived appeal. ECF No. 8 at 2.

26cv0657-LL-VET

On May 5, 2016, Petitioner was released on an order of supervision. ECF No. 7-3 at 2–4. On May 12, 2016, Immigration and Customs Enforcement stated that Petitioner "will remain under an Order of Supervision indefinitely" because DHS "is unable to obtain travel documents to his native country." ECF No. 7-3 at 5. Petitioner received a Social Security number and work authorization, paid taxes, and complied with his order of supervision. Pet. at 2.

On December 19, 2025, Petitioner was at an appointment when ICE officers gave him a Notice of Revocation of Release and an informal interview, and re-detained him. ECF No. 8-2.

On February 20, 2026, he filed the instant Amended Petition, alleging that his re-detention violated ICE regulations and that"there is no significant likelihood of removal in the reasonably foreseeable future." Pet. at 2.

## II.    LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## III.    DISCUSSION

### A.    Jurisdiction

Respondent contends that as a threshold matter, Petitioner's claims are jurisdictionally barred under 8 U.S.C. § 1252(g). ECF No. 8 at 3–4.

Section 1252(g) states that "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause

26cv0657-LL-VET

or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

Respondent argues that Petitioner's claims are barred because they arise from DHS's decision or action to execute removal orders, which removes district court jurisdiction. ECF No. 8 at 4.

The Court finds § 1252(g) does not bar its jurisdiction over Petitioner's claims. The Supreme Court has explained that § 1252(g) does not bar jurisdiction for the "universe of deportation claims" but instead "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *2 (9th Cir. Aug. 27, 2025) ("The Supreme Court has instructed that we should read § 1252(g) narrowly."). The Supreme Court later reiterated this narrow application of § 1252(g): "We did not interpret this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted). Petitioner is not challenging the execution of his removal order but is instead challenging ICE's compliance with detention regulations, statutes, and the Constitution in re-detaining him and the process required in relation to third country removal. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001) (confirming that 28 U.S.C. § 2241 confers jurisdiction on federal courts to review custody challenges for individuals with final removal orders); *Ibarra-Perez*, 2025 WL 2461663, at *2 (noting that a claim based on a lack of legal authority to execute a removal order due to a violation of a court order, the Constitution, INA, or international law, does not challenge the decision or action to execute a removal order). Therefore, § 1252(g) does not limit the Court's jurisdiction in this matter.

/ / /

26cv0657-LL-VET

### B.    *Zadvydas*

Petitioner contends that there is "no significant likelihood of removal in the reasonably foreseeable future" and he is therefore entitled to immediate release under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Pet. at 2, 9–14; ECF No. 9 at 7–8. Respondents disagree. ECF No. 8 at 7–9.

The detention and release of noncitizens who are subject to a final order of removal are governed by 8 U.S.C. § 1231. This statute provides that "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). It also authorizes the detention of noncitizens during this removal period. *Id*. § 1231(a)(2). However, once that time passes and "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," and the noncitizen must be released on supervised release. *Zadvydas*, 533 U.S. at 699–700; *see* 28 U.S.C. § 1231(a)(3) ("If the [noncitizen] does not leave or is not removed within the 90-day removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

### 1.    Rebuttable Presumption

In *Zadvydas*, the Supreme Court recognized a six-month presumptively reasonable period of detention after a noncitizen's removal order becomes final. 533 U.S. at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. The Supreme Court later clarified its holding in *Zadvydas* and explained that:

> *Zadvydas* did not hold that the statute authorizes detention until it approaches constitutional limits; it held that, *since* interpreting the statute to authorize indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other plausible reading) to authorize detention *only for a period consistent with the purpose of*

> *effectuating removal*. If we were, as the Government seems to believe, free to "interpret" statutes as becoming inoperative when they "approach constitutional limits," we would be able to spare ourselves the necessity of ever finding a statute unconstitutional as applied.

*Clark v. Martinez*, 543 U.S. 371, 384 (2005) (second emphasis added).

Respondents argue that Petitioner's total detention is less than six months and is thus constitutional. ECF No. 8 at 7.

Multiple district courts have found that the six-month presumption in *Zadvydas* is rebuttable. *See Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025) (noting that "what *Zadvydas* did make clear was that it was adopting a presumption—not a conclusive bar to adjudication of whether continued detention is authorized that lifts only after six months have elapsed"); *Uzzhina v. Chestnut*, No. 1:25-cv-01594-DAD-SCR, 2025 WL 3458787, at *3 n.3 (E.D. Cal. Dec. 2, 2025) ("The fact that a noncitizen has been held in-custody less than six months does not foreclose a claim that his or her detention is unlawful under *Zadvydas*."); *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) ("At no point did the *Zadvydas* Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period."); *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line, however, and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits."); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018) ("The Supreme Court in *Zadvydas* outlined a 'guide' for approaching these detention challenges, not a prohibition on claims challenging detention less than six months." (citation omitted)). In contrast, if the presumption was not rebuttable, "the Government would be permitted to detain noncitizens ordered removed for up to six months even when their removal is impossible." *Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *5 (D. Md. Sept. 8, 2025).

The Court agrees with these courts' reasoning and finds the six-month presumption in *Zadvydas* is rebuttable and therefore does not foreclose claims challenging detention less

26cv0657-LL-VET

than six months. Here, Petitioner's removal order became administratively final on May 4, 2016. Therefore, Petitioner's ninety-day post-removal period has passed, and if Petitioner can demonstrate that there is no significant likelihood of removal in the reasonably foreseeable future, Petitioner is eligible for release under supervision.

### 2.    Significant Likelihood of Removal

The Court finds Petitioner has met his initial burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Petitioner cannot be removed to his home country of Honduras because he was granted withholding of removal to Honduras. Petitioner cites to a Supreme Court opinion that discussed a study showing that in fiscal year 2017 "only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country." *Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021). Another court considered data that appeared to show that for fiscal years 2020 through 2023, ICE removed only five non-citizens who had been granted withholding or CAT relief to alternative countries. *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398 (D.N.J. 2025). In this case, ICE's inability to remove Petitioner for almost ten years, combined with the difficulty in removing a noncitizen to an alternative country are sufficient to meet Petitioner's initial burden.

The burden thus shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Respondents state that ICE is "working expeditiously to effectuate Petitioner's removal to a third country" and that the Removal and International Operations ("RIO") unit informed ICE on February 20, 2026 that Mexico was identified as a possible country for removal. ECF No. 8 at 2–3; ECF No. 8-1, Declaration of Daniel Negrin ("Negrin Decl."), ¶¶ 11, 14–15. Respondents add that if ICE is unable to remove Petitioner to Mexico, they will continue to diligently seek another third country for Petitioner's removal. ECF No. 8 at 3. Respondents contend that this shows a likelihood that Petitioner will be removed to a third country and indicates that his detention is not unconstitutionally indefinite. *Id.* at 8–9.

6

26cv0657-LL-VET

The Court finds Respondents have not sufficiently rebutted the showing. Although Mexico has been identified as a possible country of removal, Petitioner indicates that he will not voluntarily go to Mexico, "a country in which he lacks status and that may send him back to Honduras." ECF No. 9 at 2, 9. Other courts have recognized that "Mexico is only willing to accept individuals from other countries who 'willingly' go to Mexico." *Suarez-Ramirez v. Bondi*, No. 2:25-CV-02369-MMD-EJY, 2026 WL 115020, at *2 (D. Nev. Jan. 15, 2026); *see, e.g., Valdes-Oviedo v. Immigr. & Customs Enf't Field Off. Dir.*, No. C25-2720-KKE, 2026 WL 353266, at *3 (W.D. Wash. Feb. 9, 2026); *Castillo Rivas v. Bondi*, No. C26-0134-KKE, 2026 WL 295705, at *3 (W.D. Wash. Feb. 4, 2026) (noting evidence regarding "unsuccessful removals to Mexico where noncitizens refuse to enter Mexico willingly"); *Coke v. Bondi*, No. C26-71-MLP, 2026 WL 221514, at *2 (W.D. Wash. Jan. 28, 2026) (describing evidence that "Mexico does not accept non-Mexican deportees who . . . are unwilling to go"); *Arenado-Borges v. Bondi*, No. 2:25-CV-02193-JNW, 2025 WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) ("Moreover, the record suggests Mexico's acceptance may be contingent on the noncitizen's consent."); *Pena-Gil v. Lyons*, No. 25-CV-03268-PAB-NRN, 2025 WL 3268333, at *3 (D. Colo. Nov. 24, 2025) (noting ICE canceled deportation of Cuban national to Mexico after he indicated on two different attempts that he did not want to go to Mexico). This requirement of a willingness to go to Mexico is supported by the record here in which Respondents noted that in January 2026, Petitioner had "failed to comply with removal to Mexico." Negri Decl. § 12. The Court finds Respondents' identification of Mexico as a possible country of removal is not an indication that Petitioner's removal there is likely to occur in the reasonably foreseeable future because Petitioner has already refused to "comply with removal to Mexico," indicates that he does not want to go to Mexico, and it appears that Mexico will only take noncitizens who willingly go. *See Arenado-Borges*, 2025 WL 3687518, at *4. Additionally, ICE's diligent efforts alone do not demonstrate that they are likely to succeed in the reasonably foreseeable future, especially when ICE has been unable to remove Petitioner for almost ten years. *See Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y.

26cv0657-LL-VET

2019), *abrogated on other grounds by Alvarez Ortiz v. Freden*, 808 F. Supp. 3d 579 (W.D.N.Y. 2025) ("[I]f DHS has no idea of when it might reasonably expect [the petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it *might* occur—in the reasonably foreseeable future," and "[s]o this Court is left to guess whether his deportation might occur in ten days, ten months, or ten years."). Therefore, the Court finds that under *Zadvydas*, because Petitioner met his burden to show removal is not reasonably foreseeable and Respondents failed to rebut this showing, his continued detention is "unreasonable and no longer authorized by statute."[1] *Zadvydas*, 533 U.S. at 699–700.

### C.    Third-Country Removal

Petitioner argues that current ICE policy of removal to a third country violates the Fifth Amendment, the Convention Against Torture, and implementing regulations. Pet. at 14. Petitioner notes that a July 9, 2025 ICE Memo allows removal of a noncitizen to a third country with no notice or an opportunity to be heard if the country has given credible "assurances" that the removed person will not be persecuted or tortured. Pet. at 5–6; ECF No. 7-2. The memo also states that even without assurances, third-country removal can occur with twenty-four hours' notice—or as little as six hours if the noncitizen is given an opportunity to speak with an attorney prior to removal—and the government "will <u>not</u> affirmatively ask whether the alien is afraid of being removed to the country of removal." ECF No. 7-2 at 2 (emphasis in original).

Respondents do not appear to directly address the merits of this argument, but provide a declaration that prior to removal to a third country, ICE will provide written notice of the intended third country and wait twenty-four hours before removal, or six hours in "exigent circumstances" if the noncitizen is "provided reasonable means and opportunity to speak with an attorney prior to removal." Negrin Decl. ¶ 16.

---

[1] Because the Petition is resolved on this ground, the Court declines to reach Petitioner's other ground for relief.

26cv0657-LL-VET

"ICE may not remove a noncitizen to a country if the noncitizen's life or freedom would be threatened in that country because of the noncitizen's race, religion, nationality, membership in a particular social group, or political opinion." *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1007 (W.D. Wash. 2019) (citing 8 U.S.C. § 1231(b)(3)). "If the noncitizen expresses fear of persecution or harm upon return to any of the countries designated by the [immigration judge], the [immigration judge] must inform the noncitizen that he or she may apply for asylum, withholding of removal, or relief under the Convention Against Torture." *Id.* (citing 8 C.F.R. § 1240.11(c)(1)). "[B]oth the due process clause and the governing statute place the burden on the government . . . to provide a meaningful opportunity to be heard on asylum and withholding claims." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025) (quoting *Aden*, 409 F. Supp. 3d at 1010 (first alteration in original)). "Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x 724 (9th Cir. 2016).

This Court agrees with the other courts in the Ninth Circuit who have held that the policies provided in the July 9, 2025 ICE memo violate due process and Ninth Circuit precedent. *See, e.g.*, *Giebashvili v. Noem*, No. 25-CV-3432-BJC-VET, 2026 WL 114422, at *3 (S.D. Cal. Jan. 15, 2026) (collecting cases); *Azzo v. Noem*, No. 3:25-CV-03122-RBM-BJW, 2025 WL 3535208, at *7 (S.D. Cal. Dec. 10, 2025) (citation omitted); *Vu v. Noem*, No. 1:25-CV-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 728–29 (W.D. Wash. 2025); *see also A. A. R. P. v. Trump*, 605 U.S. 91, 95 (2025) ("[N]otice roughly 24 hours before removal, devoid of information about how to exercise due process rights to contest that removal, surely does not pass muster."). Respondents' description of the procedures in

26cv0657-LL-VET

place for third-country removal is in agreement with the policies in the July 9, 2025 ICE Memo, and Respondents do not deny that the procedures in the memo are currently being enforced. The current procedure does not inform an individual subject to removal of his right to apply for withholding of deportation or of the opportunity to present any fear of persecution or harm upon return to the designated country; may provide no notice or opportunity to be heard if the United States receives certain assurances from the receiving country; and provides notice only twenty-four hours or less prior to removal. As such, the policies provided in the ICE memo, if implemented without further procedures, would violate the noncitizen's due process rights. *See A. A. R. P.*, 605 U.S. at 95; *Andriasian*, 180 F.3d at 1041.

## IV.  CONCLUSION

Based on the above, the Court **ORDERS** as follows:

1. The Amended Petition for Writ of Habeas Corpus [ECF No. 7] is **GRANTED**.

2. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to supervision pursuant to 8 U.S.C. § 1231(a)(3).

3. Respondents are **ENJOINED** from re-detaining Petitioner under 8 U.S.C. § 1231(a)(6) unless and until Respondents obtain a travel document for his removal and follow all applicable statutory and regulatory procedures.

4. Respondents are **ENJOINED** from removing Petitioner to a third country unless they adhere to the following procedures:

    a. provide written notice to Petitioner, in a language he can understand, and to his counsel;

    b. provide Petitioner a minimum of <u>ten days</u> to raise a fear-based claim for CAT protection prior to removal;

    c. if Petitioner demonstrates reasonable fear of removal to the country, Respondents must move to reopen Petitioner's immigration proceedings;

    d. if Petitioner is not found to have demonstrated a reasonable fear of removal to the country, Respondents must provide a meaningful opportunity, and a

minimum of <u>fifteen days</u> for Petitioner to seek reopening of his immigration proceedings.

5. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated: March 27, 2026

_____

Honorable Linda Lopez
United States District Judge

26cv0657-LL-VET